UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 13-CR-10164-WGY |
| ) | |
| MICHAEL BOURQUE ET AL., ) | |
| ) | |
| Defendants. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT NEWTON'S SUPPLEMENTAL MEMORANDUM**

The United States of America, by and through Assistant U.S. Attorney Michael I. Yoon, hereby files its response to the Supplemental Memorandum in Support of Mark NEWTON's Motion to Suppress, and in Response to Questions Raised by the Court.

*Procedural Posture*

On February 14, 2014, the Court denied, without prejudice, NEWTON's Motion to Suppress.[1] At argument, the Court invited further briefing on the questions of (1) timing of determination of authentication and admissibility, and (2) the burden of proof for the government in such authentication.

*Timing of Determination of Authentication and Admissibility*

"The [C]ourt must decide every pretrial motion before trial <u>unless it finds good cause to defer a ruling</u>." Fed. R. Crim. P. 12(d) (emphasis added). As detailed within ("Preliminary

---

[1] As stated in the Government Response to NEWTON's Motion to Suppress (incorporated here and found at ECF Docket Entry 238, filed January 31, 2014), there was no violation of 18 U.S.C. §2518(8) warranting suppression of intercepted communications. Through email communications with the court (<u>via</u> its Deputy Clerk), the recordings were "made available to the [J]udge issuing [the] order," after which, the disks were "sealed under his direction." See 18 U.S.C. § 2518(8)(a). The government concedes not that there was a violation of Title III (intercepts were "made available"); only that there was a delay (five and seven days) between termination of interception and actual presentment and sealing. See United States v. Burgos Montes, 2010 WL 5184844, *8 (D. Puerto Rico, Dec. 20, 2010) ("Even though the Court understands that this [seven-day] delay is too long to be deemed within the common meaning of word 'immediate,' it does not believe that the delay was considerably long either. The delay is just above what could be regarded in this context as 'immediate.'")

Order of Proof Excerpt"), the government's foundational proof for the intercepts will include the testimony of records custodians, an employee of JSI Telecom, DEA technicians, investigators, and potentially cooperating Defendants. The hearing and testimony contemplated in NEWTON's request for pre-trial hearing will mirror, if not follow line-by-line, the expected trial testimony. As a matter of administrative efficacy, the Court is better served, and its resources are better allocated, with a determination of admissibility and authentication at and during the trial.

The government is prepared to proceed in whichever fashion the Court elects.

In his supplemental memorandum, NEWTON raises a number of concerns related to considering his motion as an authentication and admissibility inquiry in the framework of a trial. The government asserts that NEWTON's concerns are unfounded.

First, NEWTON insists on a pretrial hearing to determine whether the government has provided a "satisfactory explanation" for delay between termination of interception and actual sealing of the recordings. The proper inquiry, as previous outlined in the government's original response, is when the recordings were "made available," 18 U.S.C. §2518(8), not when they were ultimately sealed. As such, the government maintains that no violation warranting suppression of the interception occurred, but would note that, at the February 14, 2014 hearing, the Court accepted the information provided by the undersigned Assistant U.S. Attorney, as an officer of the Court, in the government's first response, and found any delay as satisfactorily explained.

Second, NEWTON cites double jeopardy concerns that might affect the government's appellate rights if the intercepts were not admitted at trial.[2] However, even in that unlikely

---

[2] A determination of authentication and admissibility at trial would inure to his benefit. "Were a defendant able to delay such a motion [to suppress] until trial, he could prevent the government from appealing, thus

2

circumstance, the government could and would proceed with witness testimony sufficient to secure convictions of all Defendants, including NEWTON.

Third, NEWTON complains that, as the government laid the foundation for the intercepts, the trial jury would necessarily hear that wiretaps were directed against him and his co-Defendants. However, such foundational testimony could be taken outside the presence of the jury, and would take little time.

Fourth, NEWTON voices concern that the undersigned Assistant U.S. Attorney would be required to give testimony regarding the time between termination of interception and sealing, and thus disqualified as the lead prosecutor. However, the foundation upon which the intercepts would be admitted does not require such testimony. Further, should the Court deem such testimony necessary, the Deputy Clerk to the Honorable Judge George A. O'Toole III could provide the facts and circumstances relating to email communications and the ultimate sealing of the disks.

To NEWTON's fifth complaint, that such testimony, from whatever source, regarding sealing would lack "jury appeal," the government re-iterates that such testimony would be unnecessary to authenticate and admit the intercepts.

Finally, NEWTON contends that if the Court's ruling (denial without prejudice) holds and the issue were decided in substance at trial, NEWTON would not be able to enter a conditional plea and receive the benefit of a third point for "acceptance of responsibility."[3] However, a decision to deny NEWTON's motion with prejudice (based on the intercepts being "made available" pursuant to 18 U.S.C. §2518(8)) would permit NEWTON to proceed with a conditional plea, and potentially enjoy the third point pursuant to USSG §3E1.1(b). Relatedly,

---

frustrating the central purpose of [18 U.S.C.] §3731." United States v. Barletta, 644 F.2d 50, 54 (1st Cir. 1980).
[3] The government has made no determination with regard to acceptance of responsibility pursuant to USSG §3E1.1.

3

NEWTON expresses concern that plea negotiations would be imperiled if the Court were to maintain the position that NEWTON's motion is properly framed as a trial issue of authentication and admissibility.  However, during the pendency of NEWTON's motion, plea negotiations with nearly all Defendants have proceeded and progressed in the normal course.

### *Burden of Proof for Authentication*

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Evidence may be admitted, subject to a factfinder's assessment of weight, where a showing is sufficient to allow a reasonable person to believe that the evidence is what it purports to be.  United States v. Savarese, 686 F.3d 1, 10 (1st Cir. 2012).  "There is no single required way…to authenticate evidence." Id.

In sustaining its burden of authentication, however, the government need not rule out all possibilities inconsistent with authenticity, nor "prove beyond any doubt that the evidence is what it purports to be." Id. at 11 (citing United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994)) (emphasis added).  The standard for authentication, and hence admissibility, is one of "reasonable likelihood." Id.

Such admission of audio recordings rests within the sound discretion of the trial court. United States v. Brassard, 212 F.3d 54, 57 (1st Cir. 2000).  The "foundation" required to authenticate such recordings is "simply an evidentiary showing of whatever facts are necessary in the circumstances to prove that the item is what the proponent claims it to be." United States v. Doyon, 194 F.3d 207, 212 (1st Cir. 1999).  While other courts have articulated a multi-prong formula for admission, "this circuit has simply required proof that the tape accurately reflects the conversation in question." Id. (citing United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986).

After the government has laid a foundation for the admission of a recording, the party challenging the recording bears the burden of showing that it is inaccurate." United States v. Font-Ramirez, 944 F.2d 42, 47 (1st Cir. 1991).

### *Preliminary Order of Proof Excerpt*

As previously indicated, the government anticipates most, if not all, Defendants will resolve their matters short of trial. At present, it appears that only NEWTON may put the government to its proof. In that instance, the government will lay a foundation for, among other things, communications in April 2013 between BOURQUE and NEWTON.[4] At that time, BOURQUE obtained a quantity of Oxycodone through NEWTON from NEWTON's Oxycodone supplier.[5] Following the transaction, law enforcement conducted a traffic stop of the supplier and found him to be in the possession of over $7,000 in cash.

The government would call a records custodian of T-Mobile to describe standard procedures for handling court orders received by T-Mobile and to identify business records reflective of compliance with the court order authorizing the interception of communications (to include pen register, trap and trace, and content) to and from one of BOURQUE's phones, a T-Mobile prepaid cellular phone using number (508) 283-0340 ("Target Telephone #4" or "TT#4") from March 27, 2013 to April 25, 2013.

The government would then call Barry Stewart, an employee of JSI Telecom:[6]

a) Stewart would describe his education, technical training, and knowledge of JSI

---

[4] Michael BOURQUE is expected to plead guilty, and has agreed to cooperate with the government. It is anticipated that BOURQUE's testimony will include an explanation of "code" terminology used during his communications with NEWTON and others when referring to Oxycodone. Also, it is anticipated that BOURQUE's testimony will include the pricing of Oxycodone pills purchased from NEWTON and NEWTON's supplier, and pills distributed to several co-Defendants.

[5] NEWTON's supplier continues to be under investigation.

[6] In the United States v. Rose and Frye, Mr. Stewart testified regarding JSI Telecom servers and software systems during trial before the Honorable Judge Nathaniel M Gorton (Case number 11-CR-10062-NMG, December 4, 2012).

>   Telecom's products, including the Transcription Translation Support System ("T2S2").
>
> b)  He would describe the computer server system and software designed and deployed to collect, record, and manage intercepted communications. Specific to DEA Boston, Stewart would also describe the installation, testing, and validation of Boston's T2S2, and the T2S2 training provided to Boston law enforcement.
>
> c)  Stewart would detail the system – how communications were intercepted by the phone carrier, transmitted to the T2S2, and recorded as a digital file by the system, which then calculated an encrypted digital signature and attached the signature to the file. Once the file was created, it was copied to a second, back-up hard drive, and then copied once again to a removable Blue Ray disk.
>
> d)  Finally, Stewart would testify that those using the system (i.e., monitors, agents) would not be able to manipulate or alter the communications data; and that the Blue Ray disks removed directly from the T2S2 could not be altered by the system or any person using the system.

The government would then call the DEA T2S2 technician who extracted the Blue Ray disk from the T2S2, and also one of the lead investigators (either DEA TFOs Matthew Gutwill or Dominic Tiberi) who witnessed the extraction and received the extracted Blue Ray disk. The investigators would then recount the securing, transport, and court-sealing of the disk; the sealed disk's placement back into a secure evidence vault; and the disks transport to court for trial.

For identification of NEWTON's voice in the communications with BOURQUE, the government may rely on BOURQUE as a cooperating witness; investigators who recognized NEWTON's voice; and/or surveillance of NEWTON that corresponded to arrangements made

over intercepted communications. Subject to such identification of NEWTON, the government would seek to admit recordings between BOURQUE (on TT#4) and NEWTON:[7]

a) On April 13, 2013, at 10:08 a.m., NEWTON called BOURQUE and the two discussed BOURQUE obtaining "two" (200 Oxycodone pills). At 2:16 p.m., NEWTON called BOURQUE and stated that NEWTON was going to meet with his (NEWTON's) associate, the source of supply who provided pills to NEWTON for BOURQUE on a previous day. BOURQUE told NEWTON "definitely do it" and stated BOURQUE would call NEWTON when BOURQUE was on his way back to the shop (DEX-Corp).

b) At 3:40 p.m., NEWTON called BOURQUE, who stated that he (BOURQUE) would be at the shop to meet NEWTON in ten minutes.

c) Shortly thereafter, surveillance officers observed NEWTON arrive at DEX-Corp. Surveillance officers then, at 4:17 p.m., observed NEWTON depart DEX-Corp.

d) Three minutes later, surveillance officers observed NEWTON in Framingham where NEWTON met with an individual known through his prior interaction with law enforcement related to narcotics. NEWTON and the individual met, at which time NEWTON handed what appeared to be cash to the individual, who placed the cash in his left jacket pocket. After NEWTON and the individual separated, surveillance officers observed NEWTON place an item into his groin area.

e) Framingham Police performed a traffic stop on the individual with whom NEWTON met. The individual, whose driver's license was suspended, was arrested for the traffic violation, and during an inventory of his possessions, a roll

---

[7] NEWTON's cellular phone was seized during his arrest on May 9, 20113.

of $4400 cash was recovered from his left jacket pocket. Additional rolls of U.S. currency were recovered from the same left jacket pocket, with other U.S. currency found in the individual's pant pocket. The total amount of currency recovered from the arrestee was $7,671.

## CONCLUSION

Based on the foregoing, and the government's previous filing, the government respectfully requests that the Court deny Defendants' Motion to Suppress with prejudice, and that the Court reserve the determination of the intercepts' authentication and admissibility until trial.

        Respectfully submitted,

        CARMEN M. ORTIZ
        United States Attorney

By:   /s/ Michael I. Yoon
        Michael I. Yoon
        Assistant U.S. Attorney

### Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those indicated as non-registered participants.

        /s/ Michael I. Yoon
        Michael I. Yoon
        Assistant United States Attorney