```
 1              UNITED STATES DISTRICT COURT

 2               DISTRICT OF MASSACHUSETTS

 3                        No. 1:13-cr-10164-WGY-ALL

 4

 5

 6   UNITED STATES OF AMERICA

 7
     vs.
 8

 9   MICHAEL BOURQUE, et al

10

11

12                    * * * * * * * * *

13

14              For Hearing Before:
                Judge William G. Young
15

16        Motion to Suppress (Continued.)

17

18                United States District Court
                  District of Massachusetts (Boston)
                  One Courthouse Way
19                Boston, Massachusetts 02210
                  Thursday, March 13, 2014
20

21                    * * * * * * * *

22

23        REPORTER: RICHARD H. ROMANOW, RPR
                  Official Court Reporter
                  United States District Court
24        One Courthouse Way, Room 5510, Boston, MA 02210
                  bulldog@richromanow.com
25
```

1                    A P P E A R A N C E S

2

3   MICHAEL I. YOON, ESQ.
    NEIL GALLAGHER, ESQ.
4       United States Attorney's Office
        J. Joseph Moakley U.S. Courthouse
5       1 Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
6       (617) 748-3180
        Email: michael.yoon2@usdoj.gov
7       For the United States

8
    JOHN F. PALMER, ESQ.
9       Seven Faneuil Hall Marketplace, North Bldg., 3rd Floor
        Boston, Massachusetts 02109
10      Email: Jpalmer@socialaw.com
        For Brian Chisholm
11

12  DEREGE B. DEMISSIE, ESQ.
        Demissie & Church
13      929 Mass. Ave., Suite 01
        Cambridge, Massachusetts 02139
14      Email: Dd@demissiechurch.com
        For Phillip Goolst
15

16  E. PETER PARKER, ESQ.
        151 Merrimac Street
17      Boston, Massachusetts 02114
        Email: Peter@parkerslaw.com
18      For Frank McGuire

19
    LESLIE FELDMAN-RUMPLER, ESQ.
20      101 Tremont Street, Suite 708
        Boston, Massachusetts 02108
21      Email: Lfedlmanr@aol.com
        For Michael Roy
22

23  LIAM D. SCULLY, ESQ.
        101 Summer Street, Fourth Floor
24      Boston, MA 02110
        Email: Liamdscully@aol.com
25      For Sean Cotter

```
 1              (Continued.)

 2

 3   DAVID J. APFEL, ESQ.
     ROBIN SCHWARTZ, ESQ.
 4       Goodwin Procter, LLP
         Exchange Place, 53 State Street
 5       Boston, Massachusetts 02109
         Email: Dapfel@goodwinprocter.com
 6       For Mark Newton

 7
     DEVIN W. McBRIDE, ESQ.
 8       One International Place, Suite 1820
         Boston, Massachusetts 02110
 9       Email: Dvnmcbride33@gmail.ocm
         For Raymond Panaggio
10

11   KEVIN L. BARRON, ESQ.
         Rudolph Friedmann, LLC
12       15 Broad Street, Suite 240
         Boston, Massachusetts 02109-3804
13       Email: Kevinbarronesq@gmail.com
         For David Akasa
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  P R O C E E D I N G S

 2              (Begins, 2:00 p.m.)

 3              THE CLERK:  Now hearing Criminal Matter

 4    13-10164, the United States of America versus Bourque,

 5    et al.

 6              THE COURT:  Good afternoon, counsel.  Thank

 7    you for attending on this session of court on short

 8    notice.  It was a medical issue that kept me from

 9    hearing the matter tomorrow as I had intended and

10    Mr. Apfel had told me of this preexisting situation, so

11    I then pushed it back, and if that's back into this

12    afternoon, if that's caught you short, and I don't think

13    it has in terms of the principal arguments, but I fully

14    understand.

15         Briefly could people introduce themselves, who

16    they represent, and if you're covering for other

17    attorneys would you let me know that, starting with the

18    government.

19              MR. YOON:  Yes, your Honor.  Michael Yoon for

20    the government with Neil Gallagher, who will be arguing

21    today's motion.

22              THE COURT:  Thank you.

23              MR. PALMER:  John Palmer for Brian Chisholm

24    who's seated to my right.

25              MR. APFEL:  Good afternoon, your Honor.  Dave
```

1    Apfel and Robin Schwartz for Mr. Newton, who is in the

2    courtroom today.

3                THE COURT:  Thank you.

4                MS. FELDMAN-RUMPLER:  Good afternoon, your

5    Honor, Leslie Feldman-Rumpler for Michael Roy.

6                MR. BARRON:  Good afternoon, your Honor.

7    Kevin Barron for David Akasa, who's in custody

8    presently.

9                MR. PARKER:  Peter Parker for Mr. McGuire.

10    Good afternoon, your Honor.

11                MR. DEMISSIE:  Good afternoon, your Honor.

12    Derege Demissie for Phillip Goolst.  I'm also standing

13    in for Attorney John Swomley.

14                THE COURT:  Thank you.

15                MR. McBRIDE:  Good afternoon, your Honor.

16    Devin McBride on behalf of Mr. Raymond Panaggio.  I'm

17    also standing in for Attorney Will Korman who represents

18    Thomas Ehwa.

19                THE COURT:  Thank you.

20                MR. SCULLY:  Good afternoon, Liam Scully for

21    Sean Cotter.  And, your Honor, I have another matter

22    scheduled at 2:30, and with the Court's permission, if

23    this hearing is still going on, I may quietly excuse

24    myself.

25                THE COURT:  And of course you may.

1          MR. SCULLY:  Thank you, your Honor.

2          THE COURT:  All right.  Let me tee this up a

3    bit to sharpen the arguments.  I think it's clear, but

4    I'll make it clear for the record.

5          This matter got off on the wrong foot and it's

6    entirely my responsibility.  When I first looked at the

7    moving papers, I had devised, in my own mind, a way to

8    handle it, as I explained last time, that I would handle

9    it as a matter of authentication at the time of trial,

10   and that commended itself to me because it put the

11   government to their heightened burden of proof.  I did

12   allow oral argument, but I stuck to my guns and that's

13   how the hearing ended.

14         This does prove the value of oral argument because

15   when I went back and reflected, I have come to the

16   determination that I cannot handle the matter that way,

17   that's not what the statute contemplates, nor is the

18   controlling decision -- and it is the controlling

19   decision of the First Circuit.  Hence I entered an order

20   in order to get an evidentiary record on which to

21   address the matter and the government has responded with

22   an affidavit from Mr. Yoon.

23         I do think we're clear that the statute has been

24   violated and therefore, before the government is

25   permitted to use the tapes, it must offer a satisfactory

1    explanation.  I am better prepared, and the

2    responsibility for any lack of preparedness is mine

3    alone today in light of the statute and the decided

4    cases, and again I think 10 minutes will be sufficient

5    for argument and we'll start by hearing the government.

6              MR. GALLAGHER:  Your Honor, we thought

7    appropriate that I address the argument since Mr. Yoon

8    has submitted an affidavit and that's the reason why I'm

9    here, your Honor.

10             THE COURT:  I appreciate it.

11             MR. GALLAGHER:  So --

12             THE COURT:  Well, here's my problem, and my

13   problem is not in any way impugning the accuracy of

14   Mr. Yoon's affidavit, and I haven't heard any argument

15   as to that, though the affidavit is rather thin on the

16   "why," it explains the "what," but it doesn't explain

17   the "why."  But what is missing entirely is anything

18   that has to do with the security of the evidence, which

19   is what the statute is addressed to.

20       I entered an order seeking affidavits.  All I have

21   is Mr. Yoon's affidavit.  We know the delay is contrary

22   to the statute.  We know that it's the government's

23   burden of proof.  And I have nothing.  Go ahead.

24             MR. GALLAGHER:  Your Honor, I read the order

25   and perhaps I misinterpreted it.  I read it, um, and the

1   Court is asking for a factual basis for the reason for

2   the delay and as I look at the cases there is some

3   discussion about factual findings about why was this not

4   met, and the only thing I would say -- and before we get

5   to that, your Honor, is with regards to the first one.

6         Now, the first one -- the statute says is that the

7   recordings, the original recordings have to be available

8   to the Court upon expiration of the order.  At least

9   with regards to the first one, I think what's clear is

10  that they're made available even before the order had

11  expired, in a sense that Mr. Yoon had arranged to get

12  the recordings sealed and at that point it really is, um

13  -- and would wait for the Court to respond, and in these

14  matters you always do.  And but, I guess --

15            THE COURT:  And what are you saying, they

16  didn't here?

17            MR. GALLAGHER:  Well, they did.  Well, they

18  did within a two-day period.  But what happened -- what

19  was timely was the notification that "We have these

20  recordings, we want to seal them, and they're made

21  available to the Court upon that aspect."

22         And so I think it would be unreasonable to expect

23  for us to go to Judge O'Toole's house at 12:01 a.m. to

24  say, "Here's the recordings, Judge, would you please

25  seal them?"

1          THE COURT:  What about an emergency judge?  We

2    have a whole protocol on the judicial end of things,

3    that if the judge is not available -- I am not available

4    in the courthouse every day and I don't expect you to

5    come hunt for me.  One of the great things about the

6    organization of this court is that I know that when I

7    leave the courthouse there is an emergency judge who can

8    act in my absence, and during the time that I'm

9    emergency judge, I take that obligation very seriously.

10          MR. GALLAGHER:  Your Honor, we know you do.

11   But to answer that question, if the period of delay were

12   substantial -- and the case law kind of alludes to that,

13   the fact that maybe two days is still reasonable, but if

14   it was a substantial delay, if, for example Judge

15   O'Toole wasn't in the district for a period of time,

16   that's what we would have done.  But in this case it was

17   not substantial, it was a delay, at the most, of three

18   days.

19        But the last one, during the same time that there

20   was a takedown of all the defendants, Mr. Yoon has other

21   responsibilities to defense counsel, to the magistrate

22   judge, for assuring timely court appearances, providing

23   discovery right away, so there's --

24          THE COURT:  Is that a satisfactory explanation

25   under the case law?

1          MR. GALLAGHER:  I believe it is, your Honor.

2    There's three different delays.  We submit the first one

3    is not a delay at all and the only thing we could have

4    done better is perhaps found another judge, instead of

5    Judge O'Toole, in a quicker fashion, but that's not

6    usually how we do things, unless there's a substantial

7    delay and we should act quicker.

8          The second one was 11 hours --

9          THE COURT:  When you say "that's not how we do

10   things," to what are you referring, is there a protocol?

11         MR. GALLAGHER:  Well, the protocol is more the

12   practice.  If your Honor --

13         THE COURT:  Is it in writing?

14         MR. GALLAGHER:  It is not in writing, your

15   Honor, but if a court is assigned a Title III affidavit,

16   you typically report back to that court, the progress,

17   and also you report back to the court for the sealing of

18   the recordings.  That's the practice.  I'm sure you're

19   familiar with that same practice, your Honor.

20         Is that required under the statute, can another

21   judge do it?  Absolutely.  But if you look at the case

22   law at that time, a delay of two days would not be

23   unreasonable for Mr. Yoon to be in that same window of,

24   um, not asking for a different judge to seal the disks.

25   If there were a longer delay, then perhaps it would be

1    incumbent on Mr. Yoon to go to a different judge, but in

2    this case a two-day delay was not substantial.  It

3    doesn't prejudice the defendants, it doesn't cause --

4              THE COURT:  But the statute doesn't require

5    that, the statute says that they will be sealed

6    immediately, there's a judicial gloss on that, and then

7    they say if that's not done, there must be a

8    satisfactory explanation.  *Mora* makes clear what I'm

9    supposed to take into account and the first thing I'm

10   supposed to take into account is whether, by clear and

11   convincing evidence, the tapes have been secured.  Now

12   I've heard representations about that, but as we sit

13   here I have no evidence on that at all.  You're arguing,

14   based on the affidavit, about the other criteria that

15   explain the delay.

16        Go ahead.

17             MR. GALLAGHER:  And that was what we're

18   responding to, your Honor, and I apologize if we were

19   not answering the Court's concern.  The affidavits were

20   meant for the purpose solely of establishing the reason

21   for the delay, and we submit the first one was not a

22   delay because it was made immediately available to the

23   Court.

24             THE COURT:  Do you want to say something about

25   the second?

1          MR. GALLAGHER:  The second one was 11 hours

2    and the reason that is so was the fact that Mr. Yoon had

3    to attend to a friend who had a serious back injury.  It

4    was AUSA Young Paik.  I saw him in the office, he was --

5          THE COURT:  But no one impugns the

6    explanation, it's that he's not the only one working on

7    this case, here you are.  I guess a concern that the

8    Court has, now that I've reflected on the statute, is

9    the urgency with which the office -- and I'm not

10   reflecting on any particular individual, but with which

11   the office takes this statutory obligation.  It is not,

12   as I had originally but erroneously conceived it, simply

13   a matter of authentication, and thus far no one has

14   impugned the good faith of the Office of the United

15   States Attorney and I do not.

16        All right.  Let me hear from Mr. Apfel.

17        Mr. Apfel, so now we have the explanation for the

18   delay, um, again I haven't heard you impugn the good

19   faith, what under the statute and the decided law should

20   I do?

21          MR. APFEL:  Well, your Honor, it's March,

22   we're almost upon April, and this boy who grew up in the

23   Bronx, three blocks from Yankee stadium, and my mind

24   turns to baseball, and, um, this case and Mr. Yoon's

25   conduct in particular, and the government's conduct,

1 reminds me of the rule in baseball that I suggest

2 applies here, namely "three strikes and you're out."

3             THE COURT:  That's not -- powerful as baseball

4 is as an analogy, that's not the decided cases.

5             MR. APFEL:  Well, in here our motion was filed

6 on December 12th of 2013.  The government asked for an

7 extension after extension after extension presumably to

8 marshal the evidence of which we have yet to see any.

9             THE COURT:  We have his affidavit, that's

10 evidence.

11            MR. APFEL:  Well, I'll come to that in one

12 moment.  But they filed their opposition on, um, January

13 31st, so almost two full months after the brief was

14 filed.  No evidence whatsoever.  I then filed a reply.

15 So that's Strike one.

16        I filed a reply within a week on February 6th and

17 we had a hearing eight days later.  I thought for sure,

18 since on every page of my reply, I talked about the need

19 for evidence, we would see evidence at the hearing on

20 February 14th.  We saw none.  Then, your Honor, on

21 reconsideration -- that's strike two.

22        Then your Honor, on reconsideration, issued an

23 order on March 4th requiring the government to submit

24 affidavits with a satisfactory explanation -- an

25 explanation as defined by the case law, long settled in

1    this circuit, which requires four elements, the first of

2    which is the integrity one, and the government submits

3    an affidavit that, as your Honor I think aptly points

4    out, doesn't touch on the integrity of the tapes.

5            THE COURT:  Well, I say I misled them.  I mean

6    I was on the wrong foot -- I mean I try to be

7    transparent.  I also try to be accurate.  So I get off

8    on the wrong foot on the first hearing, you do the best

9    you can, and I leave it where I left it.  What you

10   argued resonates with me.  I take another look at it.  I

11   can't go at it that way, so I issue an order.  But I did

12   say what I said at the first hearing, "Well, we'll

13   handle authenticity at the time of trial and the

14   heightened risk to them is sufficient."  I'm not trying

15   to reinvent the record in any way.

16           MR. APFEL:  Your order seems to be clear, but

17   I'm not going to belabor the point, your order says

18   you'll hear oral argument -- as it turns out oral

19   argument is today, on whether the government has a

20   satisfactory explanation, and you required the

21   government to prepare affidavits in connection with this

22   hearing on a satisfactory explanation.  And the case law

23   makes clear, the controlling case in the First Circuit

24   as well as Supreme Court precedent, makes clear that

25   part of the explanation has to include the integrity --

1    the maintenance and the integrity of the tapes.

2         So I think that on that ground alone, the fact

3    that the government has now had three tries, has not

4    come up with an explanation to explain -- with competent

5    evidence explaining how the T2S2 system works, no

6    competent evidence as to chain of custody, they have

7    just not come close to meeting their burden of proving

8    that the integrity of the tapes here were maintained by

9    clear and convincing evidence, they haven't produced any

10   evidence let alone clear and convincing evidence.  And

11   that Mr. Yoon's affidavit, I think is separate and apart

12   from the integrity issue, it's just wholly inadequate.

13        He -- what he did was he took his initial

14   opposition and he removed the word "opposition" and then

15   plopped down the word "affidavit."  There's nothing new

16   there.  He doesn't even attach the e-mails.  He's

17   talking about the explanation, but I would suggest, your

18   Honor, that this is not evidentiary even with respect to

19   the e-mail correspondence because it's a -- it's a best

20   evidence violation, it's a violation of Rule 1002, which

21   I haven't thought of in God-only-knows how many years.

22   But they haven't produced the original evidence.

23        Mr. Yoon, in his opposition, said that he was

24   quoting excerpts from the e-mails.  Now all of a sudden

25   the affidavit, there's a suggestion that the excerpts

1    that are quoted are the whole of these e-mails.  We

2    don't know what else was said in these e-mails.  We

3    haven't seen the e-mails themselves and the e-mails are

4    the original writing and his affidavit here is not a

5    substitute for the original e-mails under Rule 1002.

6         Now, he provides information but he doesn't

7    provide anything that gives a satisfactory explanation

8    as to the cause for the delay.  The statute says

9    "immediately," it doesn't say "leisurely," and in each

10   and every case what the e-mails -- if we accept them at

11   face value make clear, is that the government was

12   operating in an extraordinarily leisurely fashion.

13   What's most troubling about this is, putting aside the

14   cuteness of the "three strikes and you're out" analogy,

15   is there's no sense of urgency here, in any instance.

16   Look at them one by one.

17        With respect to Target Telephone Number 3, the --

18   it is terminated at 11:59 p.m. on March 15th, which is a

19   Friday.  Mr. Yoon sends an e-mail to the clerk at 3:18

20   in the afternoon that Friday giving the clerk a heads-up

21   that the wire is going to be terminated later that

22   evening.  But what does he say?  Does he say, "Who's the

23   emergency judge, can we get together over the weekend?"

24   Instead he says --

25             THE COURT:  Well, do you think that that's

1    required?

2              MR. APFEL:  Yes, absolutely.  Weekends count.

3    Under *Mora*, weekends count.

4        If you look at the District Court opinion in *Mora*,

5    I believe it's at 623, um, Fed 365, it talks about how

6    weekends count.  And the government is saying, "Next

7    week, can you give me a time next week?"  That's not --

8    that's not any sense of urgency, that's not seeking to

9    immediately make the tapes available.  And

10   Mr. Gallagher's argument that they're made available by

11   a phone call, that's just not what the case law says and

12   that's not what the statute says.  You don't make tapes

13   available by calling the clerk and saying, "Oh, by the

14   way, I have the tapes, when do you want to see them?"

15   Making them available is presenting them to the District

16   Court judge.  They're not presented, they're not

17   presented in any way, shape or form by virtue of a

18   communication that occurs.

19             THE COURT:  About three more minutes.

20             MR. APFEL:  If you look at -- if you look at

21   each one of these in each and every case, I mean the

22   second one with regard to Target Telephones 4 and 5, um,

23   they are terminated at 11:59 p.m. on April 25 and that's

24   a Thursday.  Mr. Yoon calls the District Court clerk at

25   10:36 in the morning the next day and says -- he doesn't

say "The tapes came down last night, the wire was

terminated last night, can we have time with the judge

this afternoon?"  Again it's leisurely, it's "Can we set

up a time next week?"  Next week.  And then when next

week comes, again it's a leisurely pace that follows

just as with Target Telephone Number 3.

Then with the reupping of Target Telephones 4 and

5, it's even worse.  There's a coordinated takedown on

May 9th and the wire's terminated at 11:00 a.m. on May

9th, which is a Thursday.  The government doesn't even

get around to calling the District Court until three

days later and calls on a Sunday evidencing that on

occasion even the government does work on the weekends.

THE COURT:  Now, they explain that, they

explain why.

MR. APFEL:  But that's also not an explanation

under the case law.  The case law makes clear that

inconvenience, having other things to do, is not an

excuse for not having the sense of urgency that's

required by the statute.

Your Honor, the questions that you have to ask in

a case like this is, "Was the delay here realistically

beyond the government's control?"  The answer to that is

clearly, um, "No, it was within the government's

control."  "Did the delay result from an honest

1   mistake?"  If it results from an honest mistake, then

2   the government is excused.  But here the delay --

3   according to the very e-mails that are attached to the

4   affidavit -- that are not attached to the affidavit,

5   that are assigned in the affidavit, the delay was

6   intentional.

7           THE COURT:  Thank you.  Well, intentional not

8   in the sense that they were seeking delay?

9           MR. APFEL:  Not in that sense, but they were

10  certainly not a mistake, they were, as the case law puts

11  it, they were "matters of convenience," either for the

12  government or for the District Court clerk or both, and

13  matters of convenience are not good enough within the

14  statute.

15          THE COURT:  Thank you.  All right.  Let me

16  speak with the clerk.

17          (Pause.)

18          THE COURT:  This case is scheduled to commence

19  trial on Monday the 14th of April.  I'm not continuing

20  it.  On the record before me I have no choice but to

21  rule that at present the explanation is unsatisfactory.

22  The very first thing that I have to consider on an

23  evidentiary basis is the authenticity of the

24  recordings.  I have no evidence that the authenticity of

25  the recordings, the chain of custody, has been adequate,

1    much the less clear and convincing evidence, and without

2    that I can't even get into an analysis of the other

3    three requirements of *Mora*.

4         So I'm not suppressing the tapes, though, as I've

5    now reflected, using a motion -- analogous to a motion

6    to suppress is not an improper way to raise this issue,

7    I simply, in accordance with the statute, I'm ruling

8    that as of today these tapes may not be admitted in

9    evidence and I'm not continuing the trial.

10        Now, if the government wants to appeal that,

11   that's fine, they can, I will enter, if the government

12   does appeal, a deep -- a more detailed legal

13   explication, but basically I don't have any evidence

14   sufficient to make the evaluation as to whether the

15   explanation is satisfactory.  I know nothing about the

16   authenticity of the recordings.

17        Now, if the government seeks to cure this ruling,

18   and it's open to them to try to cure the ruling, then

19   let me make it clear, if I did not make it clear before,

20   and I think I did.  I want affidavits that detail with

21   exquisite particularity as to each of these tapes from

22   every person who touched or had custody of them where

23   they were and what they were and how they were secured

24   in the interim between the end of the taping and the

25   sealing by the appropriate judicial officer.  That's for

starters.  I also want affidavits, further affidavits either from Mr. Yoon or people within the Office of the United States Attorney of the following.  I want to see the original e-mails in their entirety, but more than that I want to know what the protocol is.

If the United States Attorney's Office -- and I never worked in one, but I understand there's a manual for operations of the U.S. Attorney's Office.  If that manual governs or says anything about sealing tapes, I want to know what the manual says, and beyond the manual, if the Attorney General has promulgated instructions, orders, regulations, I want to know what they are because my statutory duty is to figure out whether this explanation I had been given is satisfactory.  And beyond the Attorney General I want to know if there's a protocol within the United States Attorney's Office, a written protocol.

Evidently -- and I certainly accept the representations from the Assistant United States Attorney, but evidently there isn't a protocol.  Well, if there isn't a protocol, I'd like an affidavit of what people understand the practice to be and who is responsible, not just who makes the line decision, but does that have to be reviewed, does it have to be reported.

1          And lastly, I want an affidavit from the United

2     States Attorney telling me whether, one, she is

3     satisfactory with the status of things as they now

4     stand, and if she's not, whether she's going to

5     promulgate a protocol, and if she does, I want to see

6     it.

7          Now, when I have all of the submissions the

8     government intends to submit, the defense has five days

9     from that day to file any further written brief that it

10    wants and I will rule upon the papers.

11         Are there any questions -- because I don't want

12    there to be questions, are there any questions about how

13    the Court intends to proceed?  We'll turn to the

14    government.

15              MR. GALLAGHER:  Your Honor, I just want to

16    make one very short point and that is the order that the

17    Court issued on March 4th states:  "A satisfactory

18    explanation for its delay in sealing the wiretap."  I

19    interpreted that differently than the Court did.

20              THE COURT:  Okay, that may be so, but the

21    order is what it is and now I've made an order that is

22    sufficient to the proceedings.  I hear your

23    explanation.  I've made my ruling.  Any questions?

24              MR. GALLAGHER:  Well, the question is whether

25    or not the Court is going to compel the government to

1    produce internal memoranda, protocols with regards to --

2              THE COURT:  Do you have any question about

3    that?

4              MR. GALLAGHER:  Well, I have a concern about

5    that which I would have to consult with my office

6    about.  As far as explaining to the Court what the

7    protocol is, I have no problem doing that.

8              THE COURT:  I want to see the actual data, I

9    want to see the memoranda that say how this is supposed

10   to be done.  And so have no doubt about it, I want to

11   see it.  Because on whether you've offered a

12   satisfactory explanation, the explanation to date is not

13   satisfactory.

14       My job is to implement the statute.  I'm going to

15   implement the statute.  And I'm not in a position to

16   make the evaluation.  First, I haven't gotten an

17   evidentiary basis as to the authenticity of these

18   tapes.  Second, I don't know whether an explanation is

19   satisfactory until I understand how clearly things are

20   supposed to be done and what the sense of urgency, if

21   you are, is in the directives that's given to Assistant

22   United States Attorneys.  So, yes, make no mistake, I

23   want it.

24              MR. GALLAGHER:  And I would only offer to the

25   Court, um, to ask a question, is whether or not what the

1  government put on evidence through testimony about the

2  integrity of the recordings, which I suggest is not an

3  issue.

4            THE COURT:  I'm not going to slip off into

5  holding some extended evidentiary hearing.  I want

6  affidavits in exquisite detail from these people.  I can

7  read and I'll read it on my own time and I'll make the

8  determination.  The case will go to trial on the 14th of

9  April.  That's when jeopardy will attach.  And unless I

10  have changed the order as it now stands, these tapes

11  can't be used.

12            MR. GALLAGHER:  Is there a particular date the

13  Court wants, because this may take some time, your

14  Honor.

15            THE COURT:  They get five days to respond,

16  that's your spur, they get five days to respond.  So if

17  you give them to me on the day before trial, at the very

18  best you couldn't put the tapes in until Day 4 of the

19  trial.

20        Do you see how the timing works?

21            MR. GALLAGHER:  I do, your Honor.  I would ask

22  just, if possible, um, maybe we could get a copy of the

23  transcript or get an order just like it, so I can

24  present this.  I misread the first Court's order.  I

25  don't want to misread it again.

1          THE COURT:  I have a Court Reporter.  You can

2    request a transcript.  That's why I have a Court

3    Reporter.

4        Anyone else have a question?

5          MR. APFEL:  I just have one request, your

6    Honor.  If the government makes its submission or

7    submissions before March 26th, as you know I'm going to

8    be out of the country until the 31st.

9          THE COURT:  Respectfully I can't help that.

10          MR. APFEL:  I would just ask for an additional

11   two days, that's all.

12          THE COURT:  No, denied.  It's not only you and

13   you have support.  When they make their submission, five

14   days thereafter you'll make your submission, I'll then

15   have a record, I'll make my ruling.  I've given them a

16   chance to cure, but they don't have to jump through

17   these hoops, they can appeal and then everything is off

18   to one side.

19        But if they don't appeal, they'll comply or do

20   whatever they do, but once I have it, they've got to

21   make clear that's it because I'm not going to have it

22   dribbled out, and that's when your five days starts

23   running.  I'll wait five days, I will try to be on top

24   of this because I know that trial is in the offing.

25   Once I have the reposit to whatever they submit, I will

1   make my ruling and it is a ruling.  I don't think this

2   is an evidentiary matter.

3        And I'm particular -- this isn't suppression,

4   under the statute I have forbidden the admission into

5   evidence of these tapes because as things stand now the

6   explanation is not satisfactory.

7             MR. APFEL:  You made yourself clear.  Thank

8   you, your Honor.

9             THE COURT:  Thank you.  And no one else a

10  question?  Thank you all.  We'll recess.

11             (Ends, 2:30 p.m.)

12

13             C E R T I F I C A T E

14

15       I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

16  do hereby certify that the foregoing record is a true

17  and accurate transcription of my stenographic notes,

18  before Judge William G. Young, on Thursday, March 13,

19  2014, to the best of my skill and ability.

20

21

22  /s/ Richard H. Romanow 03-19-14
    _____
23  RICHARD H. ROMANOW  Date

24

25