1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3                                No. 1:13-cr-10164-WGY

4

5
    UNITED STATES OF AMERICA
6

7   vs.

8
    MICHAEL BOURQUE, et al
9

10

11                           * * * * * * * * *

12

                             For Hearing Before:
13                         Judge William G. Young

14
                           *EXCERPT TRANSCRIPT*
15                       Five Plea Change Hearings
                 Kinney, Goolst, Akasa, Chisholm, and Roy
16

17                       United States District Court
                         District of Massachusetts (Boston)
18                       One Courthouse Way
                         Boston, Massachusetts 02210
19                       Monday, April 14, 2014

20
                             * * * * * * * *
21

22            REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
23               United States District Court
         One Courthouse Way, Room 5510, Boston, MA 02210
24                   bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

     MICHAEL I. YOON, ESQ.
 3      United States Attorney's Office
        J. Joseph Moakley U.S. Courthouse
 4      1 Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
 5      (617) 748-3180
        Email: michael.yoon2@usdoj.gov
 6      For the United States

 7

     JOHN F. PALMER, ESQ.
 8      Seven Faneuil Hall Marketplace, North Bldg., 3rd Floor
        Boston, Massachusetts 02109
 9      Email: Jpalmer@socialaw.com
        For Brian Chisholm
10

11   DEREGE B. DEMISSIE, ESQ.
        Demissie & Church
12      929 Mass. Ave., Suite 01
        Cambridge, Massachusetts 02139
13      Email: Dd@demissiechurch.com
        For Phillip Goolst
14

15   LESLIE FELDMAN-RUMPLER, ESQ.
        101 Tremont Street, Suite 708
16      Boston, Massachusetts 02108
        Email: Lfedlmanr@aol.com
17      For Michael Roy

18

     EDWARD J. McCORMICK, ESQ.
19      McCormick & Maitland
        195 Main Street, Suite Six - Hayward Manor
20      Franklin, Massachusetts 02038
        Email: Ejmccormick3@verizon.net
21      For John Kinney

22

     KEVIN L. BARRON, ESQ.
23      Rudolph Friedmann, LLC
        15 Broad Street, Suite 240
24      Boston, Massachusetts 02109-3804
        Email: Kevinbarronesq@gmail.com
25      For David Akasa
```

```
1              P R O C E E D I N G S
2                 (EXCERPT begins.)
3                 (Begins, 9:15 a.m.)
4                 THE CLERK:  Criminal Action 13-10164, the
5     United States of America versus Bourque, et al.
6                 THE COURT:  I'm going to proceed this way.
7     I'm informed that various of the individuals at the bar
8     desire to tender pleas of guilty.  So let's just get the
9     folks in, and the Clerk has set it up for me, who are
10    sitting in the jury box, to identify themselves.  I'm
11    going to be talking to you individually.
12          But, Mr. Kinney?
13                 MR. KINNEY:  Yes, your Honor.
14                 THE COURT:  Thank you.
15          Mr. Goolst?
16                 MR. GOOLST:  (Nods.)
17                 THE COURT:  Yes.
18          Mr. Akasa?
19                 MR. AKASA:  (Raises hand.)
20                 THE COURT:  Thank you.
21          And, Mr. Roy?
22                 MR. ROY:  (Raises hand.)
23                 THE COURT:  All right.  And, counsel, you
24    should feel free to come stand by your clients.  They're
25    in custody, so naturally I've got marshals here, but you
```

```
 1    get so you can consult with your clients.  And I'll
 2    stand here so that I can speak to them all directly.
 3              Well, actually, that's not going to work, I've
 4    got to look at them, because we're going to talk, we're
 5    really going to talk together.  And while I can do this
 6    and I can do it fairly in a group, each one of you is
 7    entitled to be treated individually.  Each one of you is
 8    in charge, really in charge of whether you're going to
 9    go through with this and plead guilty or not.  So let me
10    start this way.
11         My name is Bill Young.  I'm the judge who is
12    responsible for presiding in this session of the court.
13    I hear, through the lawyers, who told the Clerk, that
14    each one of you wants to plead guilty to the charge that
15    has been made against you individually.  Before I can
16    let you plead guilty, I have to find out certain
17    things.
18         I have to find out that you, each one of you,
19    knows what you're doing.  I have to find out that you
20    know what you're giving up, because you give up things
21    that are terribly important to you.  I have to find out
22    that you know what you're letting yourself into, what
23    can happen to you if you plead guilty.  I have to find
24    out that you want to plead guilty, not that you're happy
25    about it, but that you, individually, each one of you --
```

1    not the lawyers, not your family, nobody else, you've

2    decided that the best thing for you to do is plead

3    guilty.  And then I have to find out that the government

4    has enough evidence against each one of you that if we

5    go to trial on this case, you could be found guilty of

6    the charge against you.

7         To find these things out, I ask you questions.  If

8    you don't understand something I'm asking you, stop me.

9    I have to explain it so that you understand it.  And

10   while I need to look you in the eye and we need to talk,

11   your lawyers have come up as close as we can manage so

12   that you can talk to them and you can stop this at any

13   time and say, "I want to talk to my lawyer."  Just

14   gesture, I'll stop and we'll wait.  I'm not in a hurry

15   here.

16        Lastly it's entirely up to you whether you go

17   through with pleading guilty today or not.  If you

18   decide you don't want to plead guilty, I'm not going to

19   be angry.  I'm all set to go to trial, my job is to give

20   fair and impartial trials, and I'm ready to give you,

21   each one of you, such a trial.

22        I want to be very clear with you that I would

23   never ever punish you or any of the co-defendants for

24   going to trial.  Having a trial is one of your

25   constitutional rights.  Now, real world, usually there's

1   a discount for people who plead guilty.  The reason?

2   The government doesn't have to spend the tax money to

3   have a trial.  Usually I give the discount.  I'm not

4   bargaining with you, you're entitled to know how I

5   work.  Unless I find out you've committed some other

6   crime or you lied to me or something like that, usually

7   I give the discount.  So if you decide you want a trial,

8   fine, no discount, but I'll never punish you, not one

9   day, for going to trial.

10          Now, let's go, I'm going to do the, "Do you

11  know what you're doing?" piece of it first.

12          But before I ask the questions, you should be

13  sworn and the Clerk will swear you.

14          (ALL DEFENDANTS, sworn.)

15          THE COURT:  And we'll start in the order that

16  I called your name.

17      And, Mr. Kinney, would you state your full name.

18          MR. KINNEY:  John Patrick Kinney.

19          THE COURT:  And, Mr. Kinney, do you understand

20  the things I've just explained?

21          MR. KINNEY:  Yes, your Honor.

22          THE COURT:  How old are you, Mr. Kinney?

23          MR. KINNEY:  34.

24          THE COURT:  How far did you go in school?

25          MR. KINNEY:  I got my GED.

```
 1              THE COURT:  Are you taking any medication
 2   today?
 3              MR. KINNEY:  No.
 4              THE COURT:  Under the influence of alcohol?
 5              MR. KINNEY:  No.
 6              THE COURT:  Under the influence of any drug?
 7              MR. KINNEY:  No.
 8              THE COURT:  Know what you're charged with?
 9              MR. KINNEY:  Yes.
10              THE COURT:  Tell me.
11              MR. KINNEY:  Conspiracy with intent to
12   distribute oxycodone.
13              THE COURT:  We'll stop there, for the moment.
14         Mr. Goolst, will you state your full name.
15              MR. GOOLST:  Philip Goolst.
16              THE COURT:  And did you understand the things
17   that I've just explained?
18              MR. GOOLST:  Yes.
19              THE COURT:  How old are you, sir?
20              MR. GOOLST:  44.
21              (Interruption by Court Reporter.)
22              THE COURT:  How far did you go in school?
23              MR. GOOLST:  High school.
24              THE COURT:  One thing I skipped with
25   Mr. Kinney and I'm going to go back.
```

1        Have you ever been treated for a mental condition

2    of any sort?  And I'll stick with you, Mr. Goolst.

3              MR. GOOLST:  No.

4              THE COURT:  Are you taking any medication

5    today?

6              MR. GOOLST:  No.

7              THE COURT:  Are you under the influence of

8    alcohol?

9              MR. GOOLST:  No.

10              THE COURT:  Under the influence of any drug?

11              MR. GOOLST:  No.

12              THE COURT:  Do you know what you're charged

13    with?

14              MR. GOOLST:  Yes.

15              THE COURT:  Tell me.

16              MR. GOOLST:  Conspiracy to deliver oxycontin.

17              THE COURT REPORTER:  I'm sorry, Judge, I

18    didn't hear that.

19              THE COURT:  Conspiracy to deliver oxycontin,

20    he said.

21         And back to you, Mr. Kinney, because I didn't ask

22    about your mental state.

23         Have you ever been treated for any mental

24    condition of any sort?

25              MR. KINNEY:  No, your Honor.

```
 1              THE COURT:  Are you aware of any mental
 2   condition you may have?
 3              MR. KINNEY:  No.
 4              THE COURT:  All right.  Now we'll got to
 5   Mr. Akasa.
 6         Would you state your full name, sir.
 7              MR. AKASA:  David Akasa.
 8              THE COURT:  And, Mr. Akasa, do you understand
 9   the things that I have just explained here?
10              MR. AKASA:  Yes.
11              THE COURT:  How old are you?
12              MR. AKASA:  25.
13              THE COURT:  How far did you go in school?
14              MR. AKASA:  College.
15              THE COURT:  A graduate?
16              MR. AKASA:  I was a senior.
17              THE COURT:  All right.  Have you ever been
18   treated for a mental condition of any sort?
19              MR. AKASA:  No.
20              THE COURT:  Are you aware of any mental
21   condition you may have?  You have to answer.  You said
22   "No"?
23              MR. AKASA:  No.
24              THE COURT:  All right.  Are you taking any
25   medication today?
```

1          MR. AKASA:  Yes.

2          THE COURT:  Tell me, if you don't mind.

3          MR. AKASA:  Insulin.

4          THE COURT:  What's that for?

5          MR. AKASA:  Diabetes.

6          THE COURT:  Are you taking it as prescribed?

7          MR. AKASA:  Yes.

8          THE COURT:  How do you feel today?

9          MR. AKASA:  Good.

10          THE COURT:  My concern is you feel normal and

11   able to make decisions on your own, is that right?

12          MR. AKASA:  Yes.

13          THE COURT:  And so you know that I'm the judge

14   and I'm neutral, you know that the government is the

15   prosecutor, they're the ones who are pressing the

16   charge, and you have a lawyer who is representing you,

17   and you understand those roles?

18          MR. AKASA:  Yes.

19          THE COURT:  Do you think you can make your own

20   decisions today?

21          MR. AKASA:  Yes, sir.

22          THE COURT:  Are you under the influence of

23   alcohol?

24          MR. AKASA:  No.

25          THE COURT:  Are you under the influence of any

```
 1   drug?

 2              MR. AKASA:  No.

 3              THE COURT:  Do you know what you're charged

 4   with?

 5              MR. AKASA:  Conspiracy with intent to possess

 6   and distribute oxycodone.

 7              THE COURT:  All right.

 8         And, Mr. Chisholm, would you state your full name.

 9              MR. CHISHOLM:  Brian Chisholm.

10              THE COURT:  How old are you, Mr. Chisolm?

11              MR. CHISOLM:  45.

12              THE COURT:  How far did you go in school?

13              MR. CHISHOLM:  I graduated high school,

14   attended college.

15              THE COURT:  How far did you get in college?

16              MR. CHISOLM:  A little short of an associate's

17   degree.

18              THE COURT:  Have you ever been treated for a

19   mental condition of any sort?

20              MR. CHISOLM:  No.

21              THE COURT:  Are you aware of any mental

22   condition you may have?

23              MR. CHISHOLM:  No.

24              THE COURT:  Are you taking any medication?

25              MR. CHISHOLM:  No.
```

1          THE COURT:  Under the influence of alcohol?

2          MR. CHISHOLM:  No.

3          THE COURT:  Under the influence of any drug?

4          MR. CHISHOLM:  No.

5          THE COURT:  Do you know what you're charged

6    with?

7          MR. CHISOLM:  Yes.

8          THE COURT:  Tell me.

9          MR. CHISOLM:  Conspiracy to possess and

10   distribute oxycodone.

11          THE COURT:  And, Mr. Roy, would you please

12   state your full name.

13          MR. ROY:  Francis Roy.

14          THE COURT:  And how old are you, sir?

15          MR. ROY:  33.

16          THE COURT:  And how far did you go in school?

17          MR. ROY:  I graduated high school.

18          THE COURT:  Have you ever been treated for a

19   mental condition, sir?

20          MR. ROY:  No, sir.

21          THE COURT:  Are you aware of any mental

22   illness or condition you may have?

23          MR. ROY:  No.

24          THE COURT:  Are you taking any medication

25   today?

1          MR. ROY:  No.

2          THE COURT:  Under the influence of any drug?

3          MR. ROY:  No, sir.

4          THE COURT:  Under the influence of alcohol?

5          MR. ROY:  No.

6          THE COURT:  Do you know what you're charged

7    with?

8          MR. ROY:  Yes.

9          THE COURT:  Tell me.

10          MR. ROY:  Conspiracy to distribute oxycodone.

11          THE COURT:  Do you understand the matters that

12    I explained when I first starting talking to you this

13    morning?

14          MR. ROY:  Yes.

15          THE COURT:  And I'll skip back to you,

16    Mr. Chisholm.

17       Do you understand the matters I explained to you

18    earlier?

19          MR. CHISOLM:  Yes.

20          THE COURT:  And, Mr. Akasa, do you understand

21    the matters I explained to you earlier?

22          MR. AKASA:  Yes.

23          THE COURT:  All right.

24       Now, talking to you all, I want to explain to you

25    your rights, perhaps not all of them, but your

1    significant rights.

2         The government has made this charge, it's a charge

3    of conspiracy, but each one of you now starts innocent

4    and the government has to prove as to each one of you

5    individually that you are guilty of conspiracy.  You're

6    entitled to an individual verdict even though we'll try

7    the case as to a group.  The verdict will be

8    individual.

9         Now, here's what they've got to prove and they've

10   got to prove it, the government, beyond a reasonable

11   doubt.  They have to prove that each one of you joined

12   in a conspiracy to do something that the law prohibits.

13   And this joinder in the conspiracy -- and it's not good

14   enough that maybe you hung around with the wrong people,

15   it's not proof of conspiracy that other people were

16   engaged in a conspiracy to possess oxycodone with intent

17   to distribute or do other acts that violate the law,

18   even if you knew about it.  "Conspiracy" means you and

19   one of the other people that they have charged, or more

20   than one, engaged in an actual deal to violate the law,

21   an actual agreement.

22        Now, the deal has got to be with another

23   co-conspirator, another person who, like you, is

24   prepared, is planning, is agreeing to violate the law.

25   Undercover police officers, informants, they don't

1    count, they're not co-conspirators because they're not

2    really, truly -- whatever they may say, they're not

3    truly in on the deal.

4        So conspiracy is that criminal agreement to

5    violate the law.  It doesn't have to be in writing.  It

6    doesn't have to be a handshake.  It doesn't have to be a

7    wink or a nod.  But it's got to be genuine.  They've got

8    to prove that you got in on or formed, were part of,

9    agreed, with this conspiracy to violate the law.  That's

10   one thing.

11       The second thing they've got to prove is that what

12   the specific goal, the specific intent of the

13   conspirators is, and in this case the specific intent

14   is, the goal of the conspiracy has got to be, um, not,

15   for example, receiving stolen refrigerators and

16   distributing them -- it isn't just a conspiracy to

17   violate the law in some respects, it's a specific

18   conspiracy, and here the specific conspiracy that

19   they've charged and they've got to prove is to possess

20   with intent to distribute oxycodone.

21       What does that mean?  "Possess" means what you

22   would think it would mean, it's the common understanding

23   of "possess."  You "possess" something when you have

24   it.  I've got my keys in my pocket.  I possess them.

25   I'm carrying them around.  But it also means having the

1   power to exercise control over them.  I have a briefcase

2   in my office here in the building.  Now I'm here in the

3   courtroom, the briefcase is there, but I put the

4   briefcase there and I can go take it when I want it.  I

5   possess it.

6            So, first of all, the goal has to be to

7   possess of the conspiracy.  Here it's to possess

8   oxycodone, a specific substance, a substance that the

9   law forbids the people from possessing, unless available

10  through the medical business and the like.  But the law

11  generally forbids us all from possessing oxycodone.

12       That's not enough.  It's to possess this oxycodone

13  with the idea not of using it, not of taking it, but of

14  distributing it.  And distributing it, in terms of the

15  law, means passing it on to other people.  Now, usually

16  that means selling it and making some money from the

17  sale of it.  But the charge here is conspiracy, it's an

18  agreement to violate the law and the specific conspiracy

19  is to possess oxycodone with the intent to distribute

20  it.  And that's the charge.

21       The government doesn't have to prove that any of

22  you actually did it, but they have to prove that you

23  were in on a deal to do it.

24            In this session of the court, as I read the

25  Constitution, one of the things that may bear upon what

1    sentence I will impose upon you, if you plead guilty or

2    are found guilty, is how much oxycodone is reasonably

3    attributable to each one of you.  That doesn't mean how

4    much oxycodone you actually distribute, actually did, it

5    means how much reasonably you knew this group, these

6    conspirators, were dealing with, whether you did it or

7    not.  I'll make them prove it to a jury beyond a

8    reasonable doubt.

9         Now, there may be some other things, which one was

10   the leader or something else.  Anything that would make

11   your sentence higher, any of the things I'm supposed to

12   look at to decide what sentence -- not the stuff that

13   helps you, a discount because you pleaded guilty, or

14   anything else about you personally, that they don't have

15   to prove, but I'll consider it at the appropriate time.

16   But anything that would make your sentence higher, I'll

17   make them prove it to a jury beyond a reasonable doubt

18   if we go to trial.

19        I keep talking about proving and trials.  If we go

20   to trial here, a jury will decide these things, not me.

21   The jury, you'll have some say through your attorneys

22   who sits on that jury.  So the government has some say,

23   too, but you have some say.  The jury of average people,

24   they'll be the ones who decide.

25        At the trial you have the right to confront the

1    witnesses against you.  Now that means the witnesses,

2    they'll testify right there from that witness stand,

3    you'll be right here in the courtroom, you can watch

4    them, but much more important than that, just watching

5    them, your lawyers can ask them questions, can cross-

6    examine them, your lawyers can make arguments on your

7    behalf, your lawyers can suggest that as to the two

8    elements I say the government has to prove, there is a

9    reasonable doubt.  And if there's a reasonable doubt,

10   you cannot be found guilty.  The lawyers can argue that.

11       You can call witnesses on your own behalf.  You

12   can testify on your own behalf, but you don't have to.

13   In fact you don't have to do anything.  The government

14   made these charges -- or the charge, it's a single

15   charge, and the government has got to prove this charge

16   beyond a reasonable doubt.  You don't have to do

17   anything.  You can sit there at counsel table and see

18   what the government proves.  And to the extent you're

19   silent, I say to the jury, you're innocent.  That's the

20   word I use.  You are innocent people.  And the

21   government made the charge, the government's got to

22   prove the charge beyond a reasonable doubt.

23       Now, you can push back in all the ways that I

24   said, but you don't have to, you don't have to do

25   anything, and they cannot, the jury cannot hold it

1  against you.

2       Now that applies to me, too, seriously insofar as

3  my mind can do it.  Yes I come in here, I'm told certain

4  people are going to plead, you people are in custody,

5  that's to make sure you show up for the trial, but to me

6  you're all innocent because I don't know what the

7  evidence is going to be in this case and my job is to

8  give a fair and impartial trial.  So I'm not thinking,

9  "Well, this one is probably guilty and maybe there's

10  some question about that one," to me you're innocent.

11  And when I explain these things, I'm not giving you

12  anything.  These are your rights, you have every one of

13  these rights.

14       Now, if you plead guilty, you're giving them all

15  away.  Here's what's going to happen.  When I'm done

16  making sure you're acting voluntarily, I'll say to

17  Mr. Yoon, "So as to these five folks, what have you got,

18  tell me briefly what evidence you have?"  And then I'll

19  say, "Well, is that true?  Do you understand that?"

20  That's as close to a trial as you ever get.  There's

21  never a jury.  You don't have the right to cross-examine

22  or confront the witnesses against you.  You still have

23  the right to be silent.

24       Now, that's true.  Until I sentence you, you don't

25  have to say anything about what your involvement is.

1   Once you're sentenced though, then the government has

2   every right to find out what you did as to this charge,

3   what you did as to this charge, once you're sentenced.

4   In other words, your right to be silent is gone.

5       Now, for the ones who want to go to trial, I plan

6   to start the trial today.  But who knows?  Suppose I

7   continued that trial and then, as time passes, I

8   sentence you, that means you can be called to testify

9   against the other people they've charged and you have,

10  if you're sentenced, you have nothing to say about it.

11      Likewise if you plead guilty here this morning and

12  you go from truly being innocent, as far as I'm

13  concerned, to being guilty, you're guilty and all that

14  remains is for me to figure out what the sentence is,

15  not today, but once I've got a presentence report.

16  There's no taking back the plea if you plead, then

17  you're guilty, and all I have to do is sentence you.

18      Now, Mr. Kinney, do you understand all those

19  things I just explained?

20          MR. KINNEY:  Yes, your Honor.

21          THE COURT:  And, Mr. Goolst, do you understand

22  those things?

23          MR. GOOLST:  Yes, your Honor.

24          THE COURT:  Mr. Akasa, do you understand those

25  things?

1           MR. AKASA:  Yes.

2           THE COURT:  Mr Chisholm, do you understand

3    those things?

4           MR. CHISHOLM:  Yes, your Honor.

5           THE COURT:  And, Mr. Roy, do you understand

6    those things?

7           MR. ROY:  Yes, your Honor.

8           THE COURT:  Now let's talk about what may

9    happen to you.  And because sentencing is complex, I

10   need to talk to the government's lawyer here and it may

11   be different for different ones of you for different

12   reasons.  So I turn now to the -- and I'll go person by

13   person and we'll figure it out, some of you are pleading

14   without a plea agreement, some of you have plea

15   agreements and we'll take that individually.  But the

16   reason I talk to him now is just what he thinks he can

17   prove.  He's the one whose job it is to see if he can't

18   come up with a sentence that the government wants.

19        So while you're still innocent, you need to listen

20   to what he says could happen to you.  Now that doesn't

21   mean that that's what I will do, I'm neutral, I'm the

22   judge, but ultimately I will sentence, and I need to

23   know from him what, as I would constitute it, what's the

24   highest thing, what's the heaviest sentence I could

25   impose upon you.  And that is I don't -- let's say I

1   don't give you any discount and I go as high as the

2   sentencing guidelines will go, which is as high as I

3   think the Constitution will allow me to go, and then I

4   want him to tell me what the sentencing guidelines

5   recommend.

6        Now that doesn't mean -- and if there's any

7   mandatory minimum, I want to know that.  I want to know

8   it because I want you to know it while you're still

9   innocent.  And then if you have a plea agreement, I want

10   to go over the plea agreement so that you really know

11   what could happen to you here.  So now we're going to go

12   person by person and talk it through.

13        So we'll start with Mr. Kinney with respect to --

14   I want to know what enhancements and where they lead,

15   talk of the guideline, and then I want to know with it

16   the discount for the plea, what's the range.

17             MR. YOON:  Yes, your Honor.

18        For Mr. Kinney, given that the defendant, um, was

19   responsible for 498 to 1,990 oxycodone 30-milligram

20   pills, which translates into 14.92 grams and 59.70 grams

21   of oxycodone, the equivalence of between 100 and 400

22   kilograms of marijuana, leads to a base offense level of

23   26 at the criminal history 2.

24        And so, your Honor, just simply that, um, it is 70

25   to 87 months, that is without a plea.  Should there be a

1   plea of guilty, the guideline range would be 51 months

2   to 63 months.

3           THE COURT:  And no minimum mandatory?

4           MR. YOON:  Correct, your Honor.

5           THE COURT:  All right.

6       Mr. Kinney, now, you and I need to talk.  So what

7   he tells me is if you plead guilty here, I could send

8   you to prison for 87 months.  And I'm going to use all

9   these figures because -- I'm not saying it would be

10  higher than 87, but you understand it could be up to 87

11  months.  Are you clear on that?

12          MR. KINNEY:  Yes, your Honor.

13          THE COURT:  Now, under these guidelines,

14  they're advisory, I don't have to follow them.  I can go

15  higher.  I can go lower.  And at the sentencing I'm

16  going to listen to your attorney as well.  But the

17  guidelines are just that, they're guidelines, and I take

18  them seriously.  And they say, for the government, that

19  I should sentence you to prison for 51 to 63 months.  Do

20  you understand that?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Now, in your case you have a plea

23  agreement.  Let's take a look at it, make sure that is

24  your plea agreement.

25          MR. KINNEY:  Yes, it is.

1              THE COURT:  And have you read that?

2              MR. KINNEY:  Yes, sir.

3              THE COURT:  And have you talked it all over

4     with your attorney?

5              MR. KINNEY:  Yes, I have.

6              THE COURT:  Do you think you understand it?

7              MR. KINNEY:  Yes.

8              THE COURT:  So let's see what it says.

9         With a plea agreement, it's like a contract

10    between you and the government.  If you do what you're

11    supposed to do under the plea agreement, I will make

12    them do what they're supposed to do under the plea

13    agreement.  But you understand I'm not bargaining with

14    you, I just want you to understand.

15        Do you understand that?

16             MR. KINNEY:  Yes, your Honor.

17             THE COURT:  So here's what they say they are

18    going to recommend.  (Pause.)   They say they are going

19    recommend the discount and the low end of the

20    guidelines, is that how you understand it?

21             MR. KINNEY:  Yes, your Honor.

22             THE COURT:  So it sounds like they're going to

23    be recommending that you go prison for 51 months.  Do

24    you understand that?

25             MR. KINNEY:  Yes, your Honor.

1          THE COURT:  Okay.  They put in all these plea

2     agreements that if I sentence you in accordance with

3     what this deal is here, that you can't appeal, you can't

4     challenge it after I sentence you, and that's the law to

5     put this in here.  But when I come to sentence you, if

6     you plead guilty or are found guilty, I'm going to tell

7     you that you have a right to appeal and you do.  The

8     problem is that the only way you do, if you go through

9     with this, with this plea agreement, is if there is

10    something called "manifest injustice," because they're

11    going to run right into me or some judge in a higher

12    court and say, "Look, he pleaded guilty and he waived

13    his rights to appeal and the like."  Now, a judge could

14    find manifest injustice, but I'll tell you, since I

15    started seeing this in plea agreements, I've never seen

16    a case where that happened.  So in effect you've lost

17    your right to appeal.

18         Do you understand that?

19          MR. KINNEY:  Yes, your Honor.

20          THE COURT:  Now, other than this deal, that's

21    what your plea agreement is, has there been any promise

22    made to you, any promise at all to get you plead

23    guilty?

24          MR. KINNEY:  No, your Honor.

25          THE COURT:  No one said, "You know, plead

1  guilty before Young because we know he'll do this or

2  that"?

3        MR. KINNEY:  No, your Honor.

4        THE COURT:  Did anyone threaten you with

5  anything to get you to plead guilty?

6        MR. KINNEY:  No.

7        THE COURT:  This is a conspiracy case.  Are

8  you covering up for someone else by pleading guilty

9  yourself?

10        MR. KINNEY:  No.

11        THE COURT:  Do you know that if you're

12  pleading guilty to this charge, um, if you are not a

13  citizen, you have the risk of being deported from the

14  United States, denied admission under the laws of the

15  United States, denied naturalization under the laws of

16  the United States?

17        MR. KINNEY:  Yes, I understand that.

18        THE COURT:  Have you had enough time to talk

19  all of this over with Mr. McCormick, your attorney?

20        MR. KINNEY:  Yes, I have.

21        THE COURT:  Has he been a good attorney for

22  you, gotten for you those things which are your rights

23  under the law?

24        MR. KINNEY:  Yes, he has.

25        THE COURT:  Are you satisfied with his

```
 1    representation of you?
 2              MR. KINNEY:  Yes.
 3              THE COURT:  You still want to plead guilty?
 4              MR. KINNEY:  Yes, your Honor.
 5              THE COURT:  Why?
 6              MR. KINNEY:  Because I am guilty.
 7              THE COURT:  All right.
 8         Now Mr. Goolst.  In your case you don't have a
 9    plea agreement, so we'll see where we are here.  And I'm
10    going to ask the same question of Mr. Yoon.  It's
11    perfectly fine to plea without an agreement, but we
12    don't know what he's going to recommend, so I'll ask
13    him.
14         And you haven't got a deal.  You haven't waived
15    your rights to appeal what I do.  It's what is called a
16    "straight-up plea," you're going to plea, but you don't
17    have a deal with the government.  That's lawful, but I
18    want you to understand it.
19         Do you understand it, Mr. Goolst?
20              MR. GOOLST:  Yes.
21              THE COURT:  Now, Mr. Yoon, he's still required
22    to follow the law and I need to know how his
23    calculations go even though at the time of sentencing
24    I'll listen to your lawyer and I'll listen to you.  So
25    the same calculations as to Mr. Goolst.
```

1          MR. YOON:  Your Honor, I did want to make

2    clear for all of the defendants, um, before I proceeded,

3    that the sentencing guideline ranges that I am advising

4    the Court of are calculated, um, without the two-point

5    suggested reduction by the sentencing commission

6    amendment of April 10th, 2014.  So the sentencing

7    recommendation of the government will actually be

8    ultimately at sentencing will be two levels below the

9    sentencing guideline range.

10          THE COURT:  Well, that's helpful.  So what

11   you're saying is you're going to go ahead, since I have

12   discretion anyway, you're going to adopt what the

13   sentencing commission has advised, so your range is

14   going to be two levels lower.

15          MR. YOON:  Yes, your Honor.

16          THE COURT:  Then, though it makes it more

17   complex, we'll need to know, everyone needs to know.  So

18   go back to Mr. Kinney.

19          MR. YOON:  Yes, your Honor.

20          THE COURT:  So as to Mr. Kinney, what is the

21   range you're going to be advising me of?

22          MR. YOON:  Yes, for Mr. Kinney the ultimate

23   range that the government will advise will be a 41-to-

24   51-month range, your Honor, so the low end of the

25   guidelines will be 41 months.

1              THE COURT:  All right.  The sentencing

2      commission is changing their policy really and I respect

3      that, though I'm not bound by it, and so though now it

4      reads 51 to 63 months, they've just amended it and since

5      they've amended it, the government is going to adopt

6      that.  So he tells me what he really will recommend is

7      41 to 51 months.

8          Do you understand that?

9              MR. KINNEY:  Yes, your Honor.

10             THE COURT:  Now, understand I don't have to go

11     along with any of that, I can go up to 87 months.  We're

12     clear on that?

13             MR. KINNEY:  Yes.

14             THE COURT:  Now that he's explained that,

15     let's get these various figures, Mr. Yoon, for

16     Mr. Goolst.

17             MR. YOON:  Yes, your Honor.  Thank you.

18         For Mr. Goolst, the range of oxycodone

19     attributable to Mr. Goolst is between 498 and 1,990

20     oxycodone 30-milligram pills, translating into 14.92

21     grams and 59.70 grams of oxycodone.  Your Honor, the

22     equivalency there is between 100 and 400 kilograms of

23     marijuana.  Your Honor, the base offense level would be

24     24.  The government does believe that Mr. Goolst, as a

25     runner for Mr. Bourque, was a minor participant under

1      3(b)(1.2)(b).  So, your Honor --

2               THE COURT:  Now, don't -- I appreciate you're

3      saying that, but to get the maximum --

4               MR. YOON:  Yes, sir.

5               THE COURT:  -- don't figure that in.

6               MR. YOON:  Yes, sir.

7               THE COURT:  But you can figure it in as to the

8      other calculations you give me, and here's why.  Not

9      because I wouldn't go along with that, but you've got to

10     know the worst that can happen to you.  So assume that I

11     don't go along with that, that's the figure I want from

12     him, from the maximum that you could get hit with, and

13     then, since that's the government's view, we'll see what

14     they say as to the other.

15          You understand now, I don't have to go along with

16     this, I just want you to know what, as a practical

17     matter, you're really looking at.  Right?  You

18     understand this?

19               MR. GOOLST:  Yes.

20               THE COURT:  Very well.

21          All right.  Without that, for the maximum, but

22     then include it for the various ranges you're going to

23     give me.

24               MR. YOON:  Yes, your Honor.  That range will

25     be 78 months to 97 months, um, with, your Honor, a -- a

1    reduction, your Honor, then the potential range, if the

2    defendant is considered to be a minor participant,

3    would, in fact, be 63 to 78 months, your Honor.  Your

4    Honor, with acceptance, it would be 46 to 57 months.

5    And, your Honor, the government will be recommending a

6    range of 37 to 46 months.  And so the low end of the

7    guidelines, 37 months.

8            THE COURT:  Tell me what the range is before

9    this amendment?

10           MR. YOON:  Oh, I apologize, your Honor, I

11   appear to have misstated.  If I could start over.

12   Mr. Demissie has pointed that out --

13           (Pause.)

14           THE COURT:  These things are complex, but

15   they're very serious to all of you, because these

16   numbers mean something.  It's all very well for me to

17   say I don't have to follow them, but they come from the

18   sentencing commission and I pay attention to them.  So

19   we need to hear the right numbers now while you're still

20   innocent.

21           MR. YOON:  Yes, your Honor.  Actually the

22   final range, your Honor, the government will be

23   recommending, is going to be 37 to 46 months, the low

24   end being 37.

25           THE COURT:  Understand.  But without the

1    recent amendment, what's the range, as it stands now?

2           MR. YOON:  Yes, your Honor.  As it stands now,

3    46 to 57 months, your Honor.

4           THE COURT:  Thank you.  Okay.

5        Now, even with all of this data, I could send you

6    to prison for 97 months.  Do you understand that?

7           MR. GOOLST:  Yes, your Honor.

8           THE COURT:  The sentencing guidelines, as they

9    stand now, say that I should send you to prison for 46

10   to 57 months, but with this amendment, which the

11   government's going to go along with, that will take us

12   to 37 to 46 months, and in your case, even without a

13   plea, they're telling me that they will recommend 37

14   months.  So if you plead guilty, you can hold them to

15   that.

16       Do you understand those things?

17          MR. GOOLST:  I do.

18          THE COURT:  All right.

19       Now, other than the promise, because that's what

20   it is, that Mr. Yoon just made to you, other than that

21   promise, has anyone promised you anything to get you to

22   plead guilty?

23          MR. GOOLST:  No, your Honor.

24          THE COURT:  Are you -- you know, nothing about

25   me, you know, "We know Young, Young will do this or

```
 1    That," anyone say anything like that?

 2              MR. GOOLST:  No.

 3              THE COURT:  Anyone threaten you with anything

 4    to get you to plead guilty?

 5              MR. GOOLST:  No, your Honor.

 6              THE COURT:  Are you covering up for someone

 7    else?

 8              MR. GOOLST:  No, your Honor.

 9              THE COURT:  Do you know if you're guilty of

10    this crime and not a citizen, you can be deported,

11    denied admission under the laws of the United States and

12    denied naturalization under the laws of the United

13    States.  Do you know that?

14              MR. GOOLST:  Yes.

15              THE COURT:  Are you satisfied with

16    Mr. Demissie as your attorney?

17              MR. GOOLST:  Yes.

18              THE COURT:  Has he been a good attorney for

19    you, gotten for you those things that are your rights?

20              MR. GOOLST:  Yes.

21              THE COURT:  Do you still want to plead

22    guilty?

23              MR. GOOLST:  Yes.

24              THE COURT:  Why?

25              MR. GOOLST:  Because I did it, your Honor.
```

1           THE COURT:  All right.

2       Now, Mr. Akasa, you have a plea agreement and

3    let's have a look at that first.

4       Do you understand the plea agreement is your deal

5    with the government?

6           MR. AKASA:  Yes.

7           THE COURT:  I show you that page.  Is that

8    your signature?

9           MR. AKASA:  Yes.

10          THE COURT:  And is that your plea agreement?

11          MR. AKASA:  Yes, it is.

12          THE COURT:  And have you talked this all over

13   with Mr. Barron?

14          MR. AKASA:  Yes.

15          THE COURT:  Do you think you understand it?

16          MR. AKASA:  Yes, sir.

17          THE COURT:  You know that that's your bargain

18   with the government.  I want you to be clear on that.

19   And as to you I want the same information from

20   Mr. Yoon.  He's going to tell me the most, as I

21   understand the Constitution, the highest sentence under

22   the Constitution I could impose upon you, then he can

23   take into account other reasons for going down and

24   giving you these ranges, the range as it stands now and

25   the amended range that they'll go along with.

1    But while we're still talking about the plea

2  agreement, I assume in here there's the same waiver

3  language about appealing.  They can do that, but I will

4  tell you that if I sentence you, that you have a right

5  to appeal and you do have a right to appeal, but if my

6  sentence falls within what's contemplated by this plea

7  agreement, it's really futile because if you try,

8  they'll say, "Wait a second, he agreed not to," and

9  unless there's manifest injustice, which I at least have

10  never seen, then you're stuck with the sentence I give

11  you.

12    Do you understand that?

13    MR. AKASA:  Yes, I do.

14    THE COURT:  All right.  Let's have the same

15  data from Mr. Yoon.

16    MR. YOON:  Yes, your Honor.

17    For Mr. Akasa, your Honor, Mr. Akasa is

18  accountable for 1200 oxycodone, 30 milligram pills, that

19  translates to between 14.92 grams and 59.70 grams of

20  oxycodone, equivalency to 100 to 400 kilograms of

21  marijuana.  And the base offense level is 26.  So the

22  highest guideline range at base level of 26 would be 63

23  to 78 months.

24    THE COURT:  So 78 is the top?

25    MR. YOON:  Yes, your Honor.

1          THE COURT:  All right.  And now the range with

2  the appropriate discount.

3          MR. YOON:  Yes, your Honor.  With acceptance

4  the range would be 46 to 57 months with a maximum of 57

5  months.  And the government's recommendation would take

6  into account the amendment and that range would fall to

7  37 for 46 months, the 46 months being the maximum of

8  that range.

9          THE COURT:  And your recommendation would be

10  37?

11          MR. YOON:  Correct, your Honor.

12          THE COURT:  So following the same procedure,

13  if you plead guilty here, I can sentence you up to 78

14  months in prison.

15      Do you understand that?

16          MR. AKASA:  Yes.

17          THE COURT:  And the range that at least I'm

18  advised as things stand today is a sentence of 46 to 57

19  months.

20      Do you understand that?

21          MR. AKASA:  Yes, I do.

22          THE COURT:  But because the government is

23  going to go along with this amendment, that brings it

24  down to 37 to 46 months and they're going to recommend

25  37 months.

1        Do you understand that?

2              MR. AKASA:  Yes.

3              THE COURT:  Have you had enough time to talk

4    all of this over with Mr. Barron?

5              MR. AKASA:  Yes.

6              THE COURT:  Has he been a good attorney for

7    you?

8              MR. AKASA:  Yes.

9              THE COURT:  Gotten for you those things that

10   are your rights under the law?

11             MR. AKASA:  Yes, your Honor.

12             THE COURT:  Are you satisfied with his

13   representation of you?

14             MR. AKASA:  Yes.

15             THE COURT:  Do you still want to plead

16   guilty?

17             MR. AKASA:  Yes, I do.

18             THE COURT:  Why?

19             MR. AKASA:  Because I'm guilty.

20             THE COURT:  Okay.

21        Now, Mr. Chisholm, you don't have a plea agreement

22   but you can still plead straight up, that means that

23   they haven't yet made a promise to you, but we'll see if

24   they'll willing to make a promise to you today.  But as

25   far as I know, there's no deal, is that correct?

1              MR. CHISHOLM:  That's correct.

2              THE COURT:  All right.  So even without a deal

3     I am interested -- I can't go higher than some number,

4     under the Constitution, and I will be advised on another

5     range or ranges and I certainly will take that into

6     account, though I'm not bargaining with you.

7          Do you understand those things?

8              MR. CHISHOLM:  Yes, sir.

9              THE COURT:  All right.  Mr. Yoon, would you

10    give me the same information for Mr. Chisholm.

11             MR. YOON:  Yes, your Honor.  Thank you.

12         The range of oxycodone here would be between 498

13    and 1990 oxycodone, 30 milligram pills, between 14.92

14    grams and 59.70 grams of oxycodone, an equivalency to

15    between 100 and 400 kilograms of marijuana.

16         Your Honor, the defendant's base offense level is

17    29 as the defendant does fall into, um, under 4(b)(1.1),

18    the career offender sentencing guideline, as he was 18

19    years of age at the time of this offense.  The instant

20    offense, this offense, he's potentially pleading guilty

21    to is a felony of a controlled substance offense and the

22    defendant has two prior felony convictions for

23    controlled substance offenses.

24         That being the case, your Honor, the highest range

25    would be 151 to 188 months.  So the top of the range is

1     188.  Your Honor, with acceptance the range would fall

2     to 120 to 150 months.  So 150 would be the top of the

3     range.

4          In this case, your Honor, given the recent

5     amendment, the range would be 100 to -- 100 months to

6     125 months.  In this case, your Honor, while there is no

7     agreement, the government has spoken to counsel, and

8     while it is not a plea agreement or a promise having

9     been made, the government does believe it will recommend

10    a sentence for Mr. Chisholm in the range of 78 months to

11    92 months.

12         THE COURT:  Well, having mentioned that, if he

13    pleads guilty now, he can hold you to that.  So that's

14    the province, 78 to 92, from you.

15         MR. YOON:  Yes, your Honor.

16         THE COURT:  All right.  Just so long as we

17    understand.

18         So in your case, given your prior record, and you

19    don't get an separate trial on that, the documents are

20    there and we're not having a jury trial on what your

21    prior record is, so you are what's called -- if you

22    plead guilty to this, you're what's called a "career

23    offender" and I can put you in prison for 188 months.

24         Do you understand that?

25         MR. CHISHOLM:  Yes, your Honor.

1          THE COURT:  Now, with, under these guidelines

2     -- now I can go a little lower than these guidelines,

3     but I can go up to 188 months.  With the guidelines,

4     it's 120 to 150 months.  With the amendment, it's 100 to

5     125 months.

6          Do you understand that?

7          MR. CHISHOLM:  Yes.

8          THE COURT:  So that's what I'm going to be

9     told, that even with the amendment, the sentence that

10    the sentencing commission recommends for you is 100 to

11    125 months.  Now, they are, right here, with the Court

12    Reporter taking it down, they're promising to recommend

13    not less than 78 months nor more than 92 months.

14         Is that how you understand it?

15         MR. CHISHOLM:  Yes.

16         THE COURT:  Okay.  You understand that I don't

17    have to go along with any of that, I can go higher than

18    that all the way up to 188 months.  Do you understand

19    that?

20         MR. CHISHOLM:  Yes.

21         THE COURT:  Now, in your case, other than the

22    promise he just made to you, is there any promise, any

23    deal, any side consideration that I don't know about?

24         MR. CHISHOLM:  No.

25         THE COURT:  Anyone threaten you with anything

1   to get you to plead guilty?

2             MR. CHISHOLM:  No.

3             THE COURT:  Are you covering up for someone

4   else by pleading guilty yourself?

5             MR. CHISHOLM:  No.

6             THE COURT:  You know that if you're convicted

7   of this crime and you plead guilty of it and you're not

8   a citizen, then you may be deported if you're not a

9   natural citizen under the laws of the United States and

10  you may be denied admission under the laws of the United

11  States.

12            MR. CHISHOLM:  Yes, your Honor.

13            THE COURT:  Have you had enough time to talk

14  this all over with your attorney?

15            MR. CHISHOLM:  Yes.

16            THE COURT:  Has he been a good attorney for

17  you?

18            MR. CHISHOLM:  Yes.

19            THE COURT:  Has he gotten to you those things

20  that are your rights under the law?

21            MR. CHISHOLM:  Yes.

22            THE COURT:  Are you satisfied with his

23  representation?

24            MR. CHISHOLM:  Yes.

25            THE COURT:  Do you still want to plead

1    guilty?

2                MR. CHISHOLM:  Yes.

3                THE COURT:  Why?

4                MR. CHISHOLM:  Because I'm guilty.

5                THE COURT:  Okay.

6        Mr. Roy, in your case there is a plea agreement.

7    Let's start there.  Okay.  I've given you a signed copy

8    of it, so you take a look at that document.

9            Is that your signature on the copy of it?

10               MR. ROY:  Yes, your Honor.

11               THE COURT:  Now, have you talked this all over

12   with Mr. Feldman-Rumpler?

13               MR. ROY:  Yes, your Honor.

14               THE COURT:  And have you read it?

15               MR. ROY:  Yes.

16               THE COURT:  And do you understand it?

17               MR. ROY:  Yes, sir.

18               THE COURT:  And here again, I suppose, this

19   business about waiver of his rights to appeal unless

20   otherwise -- well, I need to tell you that if I sentence

21   you, I will tell you that you have a right to appeal and

22   that's true, you do, but so long as my sentence falls

23   within those contemplated -- though I'm not part of the

24   bargain, so long as the result falls within what's

25   contemplated by this plea agreement, unless there's a

1    manifest injustice, you are stuck with the sentence that
2    I impose upon you.
3          Do you understand that?
4          MR. ROY:  Yes, your Honor.
5          THE COURT:  Now, I need to have Mr. Yoon tell
6    me the information that, just like the others, you need
7    to listen to Mr. Yoon.
8          MR. YOON:  Yes, your Honor.
9      Mr. Roy is accountable for 760 oxycodone, 30
10   milligram pills.  That is between 14.92 grams and 59.70
11   grams of oxycodone.  That is equivalent to between 100
12   and 400 kilograms of marijuana.
13         The base offense level, your Honor, is 26, um, a
14   base level of 26.  The range would be 78 to 97 months
15   with the high being 97 months.  With acceptance, your
16   Honor, the range would be 57 months to 71 months, the
17   highest being 71.  With the amendment, your Honor, the
18   range would be 46 to 57 months, 57 being the highest.
19   In this case, pursuant to a plea agreement, the
20   government will be recommending 46 months.
21         THE COURT:  All right.  Let's start with the
22   worst.  Based upon what he's told me, I can, under the
23   Constitution, sentence you to 97 months in prison.
24         Do you understand that?
25         MR. ROY:  Yes.

1          THE COURT:  I'm not saying I will, but I'm not

2     bargaining, I can go up to 97 months and the plea

3     agreement still stands in effect.  Do you understand

4     that?

5          MR. ROY:  Yes, your Honor.

6          THE COURT:  The range, as it now stands, is 57

7     to 71 months.  With this amendment, which the government

8     will go for, the range becomes 46 to 57 months and they

9     promise you, if you do all the stuff in the plea

10    agreement and plead guilty, that they will recommend to

11    me that I sentence you to 46 months in prison.

12       Do you understand that?

13         MR. ROY:  Yes, your Honor.

14         THE COURT:  Now, other than this plea

15    agreement and the promises that they make to you in this

16    plea agreement, has anyone promised you anything to get

17    you to plead guilty?

18         MR. ROY:  No, your Honor.

19         THE COURT:  Has anybody threatened you with

20    anything to get you to plead guilty?

21         MR. ROY:  No, your Honor.

22         THE COURT:  Are you covering up for someone

23    else by pleading guilty?

24         MR. ROY:  No.

25         THE COURT:  Do you know that if you're not a

1  citizen of the United States, that pleading guilty to

2  this crime may have the consequence of being deported

3  from the United States, denied naturalization under the

4  laws of the United States, denied admission under the

5  laws of the United States.  Do you know that?

6          MR. ROY:  Yes.

7          THE COURT:  Have you had enough time to talk

8  this all over with Ms. Feldman-Rumpler?

9          MR. ROY:  I did.

10          THE COURT:  Has she been a good attorney for

11  you, gotten for you the things that are your rights

12  under the law?

13          MR. ROY:  An excellent attorney.

14          THE COURT:  Are you satisfied with her

15  representation?

16          MR. ROY:  Yes, your Honor.

17          THE COURT:  Do you still want to plead

18  guilty?

19          MR. ROY:  Yes.

20          THE COURT:  Why?

21          MR. ROY:  Because I'm guilty.

22          THE COURT:  All right.

23      Here's what we're going to do now.  Mr. Yoon,

24  focusing on the essential elements of the crime, is

25  going to telling me, with respect to you five, and he

1   may have to mention other people, but he's just going to

2   tell me briefly with respect to you five -- and so I'm

3   clear, as to these five there's no enhancements but for

4   the amount of oxycodone.  I mean that's what we're

5   talking about?

6               MR. YOON:  Yes, your Honor.

7               THE COURT:   I mean, and a career offender for

8   Mr. Chisholm, but that's not a matter of proof at trial,

9   that's a matter of his record.

10              MR. YOON:  Yes, your Honor, that's correct.

11              THE COURT:  All right.  So he's going to

12  explain to you -- and you don't have to mention his

13  record again, but he's going to explain what evidence he

14  thinks he can put before the jury as to you.  When he's

15  done -- and I'm going to go sit down now, I'm going to

16  ask each one of you, "Do you understand what he said?"

17  And he may mention things that you don't know that don't

18  pertain to you.  But as to you, I'm going to say, "Now,

19  do you understand, as to you, what he said?"  And you

20  can say "Yes," "No."  And don't agree to anything that

21  you're not agreeing to, because I'm going to then say to

22  you, "Well, is that true?"  If you say to me, "It is

23  true," I'm going to believe it, I'm going to think that

24  actually happened, the person or persons, they're guilty

25  of that, what the crime is.

1           All right.  Briefly, Mr. Yoon.

2               MR. YOON:  Yes, your Honor.  The government,

3   through evidence, would show that between November of

4   2012 and May of 2013, through intercepted phone calls,

5   through law enforcement visual electronic surveillance

6   and also witness testimony, that the defendants, through

7   those phone calls and in their meetings, agreed to

8   possess with intent to distribute oxycodone and also to

9   distribute oxycodone.  The defendants, through those

10  phone calls, did agree to in fact possess with intent to

11  distribute and to distribute oxycodone.

12      Additionally, your Honor, the government would be

13  able to prove that these defendants bought oxycodone

14  from Michael Bourque in the amounts as were indicated

15  during the Court's conversations with the defendants.

16      The defendants, having bought that oxycodone, the

17  30 milligram pills from Michael Bourque, they were

18  purchased to be sold to retail pill customers and in

19  fact were sold to such customers.  That would be the

20  evidence at trial, your Honor.

21              THE COURT:  Um --

22              MR. DEMISSIE:  One moment, your Honor?

23              THE COURT:  Of course you may.

24              (Pause.)

25              THE COURT:  Well, while he's conferring,

1    Mr. Kinney, did you hear what Mr. Yoon says?

2              MR. KINNEY:  Yes, your Honor.

3              THE COURT:  Do you understand it?

4              MR. KINNEY:  Yes.

5              THE COURT:  And do you understand that if

6    that's true, if you tell me that's true, you'll be

7    agreeing to the amounts of oxycodone that were mentioned

8    earlier while I was talking about how the sentence would

9    potentially work out.

10         You understand that?

11             MR. KINNEY:  Yes, your Honor.

12             THE COURT:  Are those things true?

13             MR. KINNEY:  Yes, your Honor.

14             THE COURT:  All right.

15         Mr. Akasa, again I just want you to understand

16    that if you agree to this, you're agreeing to the

17    specific amounts that he talked about when I was asking

18    him about the potential sentence.

19         Do you understand what he had to say with respect

20    to you?

21             MR. AKASA:  Yes, I do.

22             THE COURT:  Is that true?

23             MR. AKASA:  Yes, it is.

24             THE COURT:  And, Mr. Chisholm, I want you to

25    be clear, if you agree to this, you're agreeing to the

1    amounts that we went over when I was talking to you

2    individually and asking about the potential sentence.

3         So let me ask you, did you understand what he had

4    to say?

5              MR. CHISHOLM:  Yes.

6              THE COURT:  Now, as it pertains to you, is

7    that true?

8              MR. CHISHOLM:  Yes.

9              THE COURT:  All right.

10        Back to Mr. Goolst.  Mr. Goolst, one of the things

11   here is, if you agree to this, you're agreeing to the

12   amounts that he described when he was explaining to me

13   the potential sentence that might be imposed upon you.

14        Do you understand that?

15             MR. GOOLST:  I do.

16             THE COURT:  Do you understand what he had to

17   say?

18             MR. GOOLST:  Yes.

19             THE COURT:  Is what he had to say true?

20             MR. GOOLST:  Yes.

21             THE COURT:  All right.

22        Mr. Roy, understanding that we're -- you would be

23   agreeing to the amounts as he earlier explained them, do

24   you understand what he had to say?

25             MR. ROY:  Yes, your Honor.

1          THE COURT:  Are those things, as they pertain

2     to you, are they true?

3          MR. ROY:  Yes.

4          THE COURT:  Thank you.

5      All right.  Excuse me.  I find that Mr. John

6     Kinney, Mr. Philip Goolst, Mr. David Akasa, Mr. Brian

7     Chisholm, and Mr. Michael Roy, knowingly, intelligently,

8     and voluntarily are exercising their right to plead

9     guilty to this one-count indictment, and the clerk may

10    accept the plea.

11         All of this is serious, gentlemen, but this is

12    most serious.  The clerk, one by one, is going to ask

13    you -- and she's going to say, "You earlier pleaded not

14    guilty, do you want to change your plea to guilty?"  If

15    you want to go through with this, you say "yes."  If you

16    say "no," that's fine, we'll get you set for trial

17    here.  If you say, "yes," she'll say, "How do you now

18    plead, guilty or not guilty?"  If you say "guilty" when

19    the Clerk is asking you, you're guilty, no taking it

20    back or starting over.

21         Do you understand, Mr. Kinney?

22         MR. KINNEY:  Yes.

23         THE COURT:  Do you understand, Mr. Goolst?

24         MR. GOOLST:  Yes.

25         THE COURT:  Do you understand, Mr. Akasa?

1          MR. AKASA:  Yes.

2          THE COURT:  Do you understand, Mr. Chisholm?

3          MR. CHISHOLM:  Yes.

4          THE COURT:  Do you understand, Mr. Roy?

5          MR. ROY:  Yes.

6          THE COURT:  The Clerk may accept the pleas.

7          THE CLERK:  Mr. Kinney, you have previously

8    pled not guilty to a one-count indictment charging you

9    with conspiracy to possess with intent to distribute and

10   to distribute oxycodone in violation of Title 21, United

11   States Code Section 846.  Do you now wish to change your

12   plea, yes or no?

13         MR. KINNEY:  Yes.

14         THE COURT:  How do you now plead to Count 1,

15   guilty or not guilty?

16         MR. KINNEY:  Guilty.

17         THE CLERK:  Mr. Goolst, you have previously

18   pled not guilty to a one-count indictment charging you

19   with conspiracy to possess with intent to distribute and

20   to distribute oxycodone in violation of Title 21, United

21   States Code, Section 846.  Do you now wish to change

22   your plea, yes or no?

23         MR. GOOLST:  Yes.

24         THE COURT:  How do you plead to Count 1,

25   guilty or not guilty?

1              MR. GOOLST:  Guilty.

2              THE COURT:  Mr. Akasa, you have previously

3    pled not guilty to a one-count indictment charging you

4    with conspiracy to possess with intent to distribute and

5    to distribute oxycodone in violation of Title 21, United

6    States Code, Section 846.  Do you now wish to change

7    your plea?

8              MR. GOOLST:  Yes.

9              THE COURT:  How do you now plead to Count 1,

10   guilty or not guilty?

11             MR. GOOLST:  Guilty.

12             THE CLERK:  Mr. Chisholm, you have previously

13   plead not guilty to a one-count indictment charging you

14   with conspiracy to possess with intent to distribute and

15   to distribute oxycodone in violation of Title 21, United

16   States Code, Section 846.  Do you now wish to change

17   your plea, yes or no?

18             MR. CHISHOLM:  Yes.

19             THE COURT:  How do you now plead to Count 1,

20   guilty or not guilty?

21             MR. CHISHOLM:  Guilty.

22             THE COURT:  Mr. Roy, you have previously pled

23   not guilty to a one-count indictment charging you with

24   conspiracy to possess with intent to distribute and to

25   distribute oxycodone in violation of Title 21, United

 1   States Code, Section 846.  Do you now wish to change

 2   your plea?

 3               MR. ROY:  Yes.

 4               THE COURT:  How do you now plead to Count 1,

 5   guilty or not guilty?

 6               MR. ROY:  Guilty.

 7               THE COURT:  Very well.  Let's set the time for

 8   sentencing.

 9        In Mr. Kinney's case, I propose the 9th of July at

10   2:00 p.m.  Is that satisfactory, counsel?

11               MR. McCORMICK:  Your Honor, that is my

12   vacation week.

13               THE COURT:  All right.  We'll pick another

14   date.

15               THE CLERK:  Tuesday, July 22nd?

16               MR. McCORMICK:  That's fine.

17               THE COURT:  And for the government, Mr. Yoon?

18               MR. YOON:  Yes, sir, that's fine.  Thank you.

19               THE COURT:  That's the date.

20        And as to Mr. Goolst, sentencing on July 10th at

21   2:00 p.m.  Is that satisfactory?

22               MR. DEMISSIE:  Yes, your Honor.

23               MR. YOON:  Yes, your Honor.

24               THE COURT:  Very well.

25        Mr. Akasa, July 14th, at 2:00 p.m.?

```
 1                 MR. BARRON:  Yes, your Honor.

 2                 MR. YOON:  Yes, your Honor.

 3                 THE COURT:  Very well.

 4          Mr. Chisholm, July 15th, at 2:00 p.m.?

 5                 MR. PALMER:  Your Honor, that's my vacation

 6     week.

 7                 THE COURT:  We'll pick another date.

 8                 THE CLERK:  July 9th?

 9                 MR. PALMER:  That's fine.

10                 THE COURT:  All right, July 9th at 2:00 p.m.

11     I didn't hear the government?

12                 MR. YOON:  Yes, that's fine.

13                 THE COURT:  Very well.

14          And, Mr. Roy, July 21st at 2:00 p.m.?

15                 MS. FELDMAN-RUMPLER:  That's fine, your Honor.

16                 MR. YOON:  That's fine, your Honor.  Thank

17     you.

18                 THE COURT:  Very well.

19          Now, the defendants are in custody and they're

20     remanded to custody.  Counsel, you're excused, but would

21     you, before you leave the courthouse today, go by

22     probation, tell them of this changed circumstance so

23     that they may start a presentence report.  Thank you.

24     They're remanded to custody.

25                 (10:20, first five leave.)
```

1        THE COURT:  The Court will take a brief recess

2   while we set up.  We'll recess.

3            (10:20 a.m., break.)

4            (*EXCERPT* ends.)

5

6            C E R T I F I C A T E

7

8        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

9   do hereby certify that the foregoing record is a true

10   and accurate transcription of my stenographic notes, of

11   the aforementioned *EXCERPT*, before Judge William G.

12   Young, on Monday, April 14, 2014, to the best of my

13   skill and ability.

14

15

16   /s/ Richard H. Romanow 07-14-14
     _____
17   RICHARD H. ROMANOW  Date

18

19

20

21

22

23

24

25